Good morning. Jones v. Ceinski, Ms. Humphreys Good morning, your honors. May it please the court, Ariel Humphreys for Plaintiff Appellant Jeremy Jones. No reasonable police officer could think that it was constitutionally permissible to grab and twist the arm, choke, punch, and use racial slurs against a smaller man with a visible physical disability who was compliant, non-threatening, and stopped for a minor, non-criminal traffic infraction. But because of Officer Ceinski's actions, Mr. Jones suffered an umbilical hernia, a wrist injury, and significant emotional damage. The fact that Mr. Jones lawfully possessed a gun in his vehicle, which he voluntarily disclosed and was out of reach, does not make Officer Ceinski's actions reasonable. For these reasons, all three Graham factors strongly favor Mr. Jones. Defendant's argument- The officer was justified in using some force, right? As I understand the facts, and I want to make sure you can help me with this, that I'm understanding them in the light, the record in the light most favorable to your client. But your client told the officer that he had a firearm, that it was on the floor of the car, right? It was under the driver's seat. Under the driver's seat, on the floor. Okay, would be entitled, would he not, to use at least some force to eliminate the threat of access to the firearm? Isn't that right? In this situation, no force was necessary. No force? I would say no force was necessary. He can't use any force? If he uses even any force at all, he violates the Constitution? So, to elaborate on that, some force might be justified. Okay, that's what I was, that's exactly what I asked. He could use some force? Some force, some limited amount of force in order to protect himself and secure, because yes, there was a gun that our client voluntarily disclosed. He had a concealed carry permit. He handed it over. He told the officer, yes sir, there is a weapon in the car. The weapon was under the driver's seat in its holster, which it was following all proper protocols. There was a grab and a twist. There's a grab and a twist. There's also a headlock and a hit to the head. A chokehold, yes. A chokehold, yeah, I'm sorry. Thank you. A chokehold and a strike to the head, right? Correct. All of that force was used, which is excessive. And that's everything, right? That's all the force. It's the grab and twist, the chokehold, and the strike to the head, right? Correct. The odd thing to me about this record is, it's summary judgment, right? It appears that insofar as we read it in the light most favorable to your client, to the extent there was any injury, the injury would be attributable to the grab and twist, not to the chokehold and strike. And to the extent that there was something, to me, the thing that appears to be the most justifiable use of de minimis force is the grab and twist, not the chokehold and strike. But there's no injury from the chokehold and the strike. So a few different answers to your question, Your Honor. First, if this court finds that the grab and twist was justified in order to protect the officer's safety and secure the weapon, that would still make the additional uses of force excessive. There was no legitimate law enforcement reason, if someone is already secured with a wrist lock, to then move forward with the chokehold, which is an extreme amount of force, and then to punch him in the head on top of that. Both of those additional uses of force, because there's no law enforcement purpose in securing the scene, can be seen as excessive. And further, they can be seen as gratuitous because they didn't serve that law enforcement purpose. And the fact that if the court were to find that the injuries were not as a result of the chokehold and the punch to the head, that does not mean that it was not an excessive use of force. While evidence of an injury can indicate the amount of force used, the lack of injury does not mean that the force is not excessive. And I think this is especially the case when you look at a chokehold. There has to be injury, doesn't there, though, for it to be actionable under Section 1983, right? If there was de minimis force and no injury, then there would be no excessive force. But here, it was more than de minimis force, and there were injuries. There was the umbilical hernia, the wrist injury, and the significant emotional damage as a result of all of these actions. And the fact that our plaintiff did not suffer more injuries from the chokehold does not mean that the chokehold was not excessive force. A chokehold is a type of force that can cause significant damage or can be seen as even deadly force, and that has been held to be deadly force in other situations. And so the fact that there weren't injuries from that here does not mean that it was not excessive. And just to go back to the point of why perhaps no force was even needed here, our client was completely compliant, non-resistant. He was out of the car while the gun was under the seat in the car, voluntarily disclosed. He was stopped for a very minor traffic infraction. And in that situation, when the officer learns of the gun, he had many options available to him. And a reasonable officer could have asked our client to step further away from the car, put his hands above his head, sit on the curb, etc. Can I ask you a question about the record? Yes. So as I understand it, your client was standing in the front of the car when the incident happened. The gun was underneath the seat as we established earlier. Where was the passenger at that particular point? So the point at which the pushing happens and the arm lock, so that where the force started, where was the passenger? As I understand it, he was still in the car. Is that right? Yes. The passenger had not been asked to exit the vehicle, so the passenger was still sitting there. At the time the choke hold began, the record indicates the passenger got out and was yelling, oh, he can't breathe, he's choking, he has a physical disability, he's handicapped. Does that change the analysis? So in other words, if it was a passenger-less car, that would be one thing, because the only person who could have access to the gun was at the front of the car as opposed to near it. But is the fact that the passenger was next to the gun, does that change the need part of the test for why law enforcement at least needed to apply some degree of force? And I'm not talking about the choking and the punching, but just some degree of force at that point in order to secure and then take care of the passenger? I think the presence of a second person would go to the second gram factor, the threat of danger, the threat to the officer's safety. Is that significant where there's an open gun, whether lawfully held by your client or not, there's a gun underneath the seat next to someone while there's a single officer talking with someone right in front of the car. Is that not a pretty serious threat? The person in the car is something the officer can consider, but a reasonable officer would see that and can ask the person to step out of the car as well and ask both individuals to step away from the car, even move an individual or perhaps use a limited use of handcuffs in order to secure the scene. But the presence of a second person does not mean that the grabbing of the arm, the choke hold, and the punch then became justified. Those were still excessive uses of force and the idea that you would use both arms on one person then using that extreme amount of force and not do anything related to the second person isn't reasonable in the situation. And so the second person doesn't make the use of force against our client, Mr. Jones, any more justified. Is your client's disability with respect to his hands something that we should consider or that we should assume that the officer was aware of when we look at the facts in the light most favorable to your client? Yes to both of those questions, Your Honor. It should be considered in terms of, again, the threat posed by our client. Mr. Jones has severe osteoporosis and so his hands are in a permanently flexed position, which is plainly visible when you see him and would have been visible to Officer Chinsky when he handed over his license registration and concealed carry permit. There's also evidence in the record that Officer Chinsky saw this and he called our client a handicapped N-word and so he was aware of the physical disability and I think it's relevant to the threat that our client posed because he saw that this was a man who had a physical disability, was a smaller stature, and was fully compliant and non-resistant and stepped in outside away from the weapon. Those are all factors that should have gone into the analysis of how much force is needed in order to secure the officer's safety during the course of this traffic stop. What's the best case for you on the clearly established prong? On the clearly established prong, I would point to Hadley as our best case in terms of a single use of gratuitous force against a compliant non-resistant suspect is excessive. So which box are we sort of are we in the same case, the broad principle, or the so obvious box? I think Hadley is an analogous case because in that case there was also a gratuitous punch and there the court found a single punch was found to be excessive force. The problem though the passenger and the there being only a single officer there, doesn't that sort of take this outside of some of those other similar cases that you've pointed to? There is no one case that we identified that had two passengers and all of the exact facts, but the principle remains. The broad principle is sort of the way to go. So tell me what broad principle you think is the closest for you and what case that is in that what case the broad principle comes from? The broad principle is that any a single use of gratuitous force against a compliant non-resistant suspect is excessive force. And so Hadley is a broad principle. Lee also has that principle. And this court has also found I think in another way that this is clearly established is if you take Graham when all three Graham factors obviously favor a plaintiff, which they do here, all three of them go in Mr. Jones's favor. He was stopped for a minor infraction. He posed no threat because he was fully compliant and non-resistant and he was not resisting or attempting to flee in any way. When the three Graham factors obviously favor plaintiff, then this court has found that it is obvious to the officer that the force is excessive. The problem there though is the conversation you and I had earlier about what the threat was because it seemed that I thought you agreed that at least at some point during this the officer could have perceived a reasonable threat that there was an unsecured passenger next to an open firearm even while he was right in front of the car. And at that point at least it would seem that there is some degree of force that can be now whether this is the amount that should have been used or not is a separate story. But I think that factor has to weigh at least a little bit in front of the off with the officer, does it not? I think under the facts and this is this is all you know on the summary judgment standard. So we look at taking in the facts most favorable to the plaintiff here. The second passenger was not presenting a threat because they were also following instructions. They were staying in the car. They had not been asked to leave. It was not following instructions. That's just somebody who's there and next to a gun while an officer is trying to deal with somebody at the front of the car. Even if if we were to say that that the presence of the second person presented some risk safety and some amount of force was permissible, this amount of force was excessive. This is an extreme amount of force. It wasn't just that wasn't just asking him to move, wasn't just him stepping away, wasn't just even putting his hands to actually move or client. It was the wristlock, chokehold, and punch. Okay, we understand. You saved three minutes for rebuttal. Mr. Bossert. Good morning. May it please the court. My name is Scott Bossert, Assistant County Attorney, Sarasota County, Florida, representing Deputy David Sinskey, Jr. And to to kind of look at this case, we've got to look at this in its totality, everything that happened. This is a nighttime traffic stop. It's after 11 o'clock at night. Deputy Sinskey's on his own. He's made a stop of a car that's opened a door while while moving. So he's presuming there's more than one person in the car already. We know from established law that traffic stops are what are called fraught with danger and that the law provides officers with the unquestioned authority to control traffic stop to make sure people don't move around at the traffic stop if they're outside of the vehicle. He's called for backup already when the cars have come to a halt. The undisputed facts in this case show that at some point the occupants of the car got out of the car upon direction. No one was making any movement toward the car. Did you say occupants or occupant? Occupants. There were two in the car. They may not have at the same time simultaneously, but eventually were both outside the car during this during this incident. In the course of learning, receiving the driver's license, being made aware of the the gun permit, being made aware that the gun was inside the car, Deputy Sinskey himself visually observed that that gun in the open. At that point, he's the only officer at a nighttime stop with two people. He has the unquestioned authority to take some action to use some force to ensure not only his safety but everyone else's. Counsel, I don't think there's any doubt that everything you've said up to that this point is is exactly right. I don't think your opposing counsel disputed anything at that point up to this point. I think the issue is about the amount of force used because one of the factors we need to consider is the relationship between the need and the amount that were done. And here in the light most favorable to the plaintiff, I'm not saying these are the actual facts, but in the light most favorable to the plaintiff, your client then puts him back in an arm lock, then puts him in a chokehold to the point that he's almost passed out according to his testimony, and then hits him in the head. I don't know any case that says that that's de minimis or that that is established need based on or enough force based on the need that you've just identified. Well, there are a number of cases that talk about when there's a weapon inside a vehicle that some amount of force has been found to be okay. There's no doubt, counsel, there's no doubt that some force would have been fine here. But the question is the point at which he's directed to come out of the car and is at the front of the car is a handicapped man is away from the firearm and does not have reach to it. Outside of handcuffing him or telling him to sit down or even pushing him up against the car and stay here while he deals with the second person, how is the chokehold to the point of almost him passing out and then striking him on the head, how could that possibly be a justifiable use of force? Well, to go back one step before that, one thing we can't do in this proceeding is come up with, you know, what he could have done better. We can't, we can't. I haven't, I don't think anything I've said has indicated that. No, no, I'm not saying it, but I just. I agree with you. He could have this, he could have that, but we can't, we have to look at what he actually did. I agree with you. And the order in which these things happen, according to the district court's order, the first act was hands in the neck. Well, let me be clear. The district court's order doesn't mean anything to me because we review this de novo. Understand. The only thing I care about are the facts as I understand them. And the facts as I understand them are, I think as the chief judge had earlier asked, which is, there's a hand in the back, sort of grabbing the hand and twisting it, pushing him up against the car, then a chokehold, and then at some gap of time, striking him in the head. Yes. Is that what the facts show? That's the fact. Those are the facts. Okay. We're working on that. What do you say justifies that, those facts? Well, again, it's the presence of the gun in the car. And the deputy in these circumstances, you know, while he's had compliance to this point, there's no guarantee it'll continue. There's no guarantee someone will take steps to go after that weapon. He's got to make sure while he's waiting for backup, which he knows is coming quickly, to have a temporary hold on this individual to prevent that from happening. So that not only his safety, could he have also slammed Mr. Jones's face onto the car? Don't recall that. No, I'm saying under your rationale, could he have also done that? If any use of force, if some minor use of force is justified, did that give him permission to go as far as he did? And if yes is your answer to that, then how far could he have gone without a constitutional violation? That's a very good question. And while he did, you know, he did have one additional strike to the head. Again, there's a limited use of force in the circumstances. Yes, if he had gone further, and there's a number of cases talk about. Why did he have to go any further than the grab and twist? What about this situation? Allowed him after a grab and twist subdues the detainee to use then a choke hold and a strike to the head. It was simply to keep the plaintiff driver stationary while backup was arriving. Well, he was stationary before he touched him. Right. And then he was stationary when he grabbed his wrist. And then he was stationary when he threw him up against the car. And I don't understand why he needed to be more stationary to choke him out and then needed to be more stationary to hit him in the head. That's what I'm having trouble with. Understandable. However, force, you know, there are cases that have force even greater than this that have been okay under the qualified immunity. Okay, so let's talk about that. I've tried to look at every de minimis case. That's sort of where you and the district court were. This is de minimis and we've said some pretty extreme stuff as de minimis. I've looked at all of those cases, at least the best that I could. And I cannot find one where we said that choking someone out till they're almost passed out has been de minimis or that a strike to the head is de minimis. Both those are, if I'm missing a case, let me know which one says that. But I've not seen either of those choking or hitting in the head we've said as de minimis. Well, in terms of chokeholds and being knocked around, so to speak, there's a couple of cases. They're not in the briefs. These were after briefing was concluded. This court in Marentes versus Miami-Dade County, 649 Fed Appendix 665. So I'm going to ask you just for my own help, because we're only bound by our published cases to focus on published decisions. Do you have any on the list of cases you didn't tell us about before we got here today? Do you have any public decisions? One that is in the briefs is Post versus City of Fort Lauderdale, 7 Feb 3rd, 1552. And a chokehold was applied to someone who had simply committed a building code violation. There's no issue of there being a weapon involved. And do we say that was de minimis? Or do we just say there was no, it ultimately, because of qualified immunity or whatever, there was no Fourth Amendment violation? Because those are different things. There's no Fourth Amendment violation there. Right. It didn't say that. We didn't say the chokehold was de minimis, did we? Unnecessarily, no. OK. But it's still, it goes to the idea that the magic, you know, chokehold's not a magic word that creates . . . OK, let's back up a moment. When you say we said there was no Fourth Amendment violation, do you mean just that? Or do you mean there was no clearly established Fourth Amendment violation? The defendant in that case was entitled to qualified immunity, I believe is the . . . Did we reach the clearly . . . Did we decide that based on not clearly established? Or did we find that based on no violation? Don't recall that specifically right this moment. OK. There's a difference. Sure, oh, certainly, certainly. Any other decision? You mentioned post. Any other ones that you want us to take a look at that you think that punching or choking we've said is de minimis? After someone's been subdued and they've already, you know, had a wrist lock and banged up against the car? Well, again, and the notion here is not necessarily that we have to prove or proof that there's de minimis force applied. The proof here is that it's objectively reasonable force. I understand, but if the concept is you said a bunch of other stuff is OK . . . Right. Well, I'm asking in the context of saying or holding that force is de minimis, have we ever said that a chokehold or a punch is de minimis? I don't know that it specifically would show that. In these cases, as you know . . . Especially where he's already been subdued by the grab and twist. And in so many of these cases, you know, that, as we know, the devil's in the details, and there's so many acts that come into play. Rodriguez versus Farrell, 283, 1341, talks about an arm twist of a detainee who had recent elbow surgery, was put in a police car, was not accessible. Rodriguez is probably, I think, the best case for you. But the problem with Rodriguez, as I understand it for you, is it's a grab and twist case. And what we have here too is something beyond that because we have the chokehold and the strike to the head. Sure. You agree? I mean, that's not an issue in Rodriguez. It's a combination. It's a combination of . . . Here's what we said in . . . Here was the act in Rodriguez. The deputy, quote, grabbed plaintiff's arm, twisted it around his back, and jerked it up high to the shoulder, and then handcuffed the plaintiff. That's the force that was in Rodriguez. If we had that, then I think we'd be okay here, or at least closer to the mark. But it's the then choking until someone almost passes out, and then after that, hitting that person in the head, striking them in the head. That seems to be the excess that's problematic, right? Well, again, it's a question whether it's excessive as far as the case on . . . How is it not? What is necessary about that? What's reasonable or necessary after he's been subdued by a grab and twist of the kind that we said is permissible in Rodriguez? How is it reasonable and not excessive to then you employ a chokehold where he almost passes out, and a strike to the head? It probably involves some level of speculation. It could be that the arm twist was not sufficiently satisfied for the deputy. But right now, we have to . . . If there's speculation, then I would think that he wins because it goes to a jury to figure out what really happened, right? Sure. But again, the notion here, whether . . . Of course, this court can determine there's no clear established law on this subject as well, and we . . . So what's your best argument for that, that there's no clearly established law here? Because your opposing counsel points out a broad principle about use of gratuitous force, and we've certainly said we've applied that broad principle in any number of cases where force was used against a subdued suspect. Yes, and again, the notion here is this was only manual force at the end of the manual force, which concluded as soon as backup arrived, medical attention was provided, the suspect complained . . . I know, but counsel, let's back up. Again, we're assuming that it's a constitutional violation, so now we're in clearly established land. After the grab and twist, in other words, the similar conduct to Rodriguez was . . . And there's no dispute, at least in the light most favorable to the plaintiff, that the suspect was subdued here. At that point, wouldn't we say that the punch and the chokehold was gratuitous violence? If not, then I think your argument has to be that any time someone is being detained because the officer knows that there's a gun nearby, that they can put that person in a chokehold and punch them. Well, they've got to put them in a position where the safety of everyone involved is preserved. Right, so if someone is already detained, then either this would be a violation or you could always do that just as an extra measure to be sure. It probably falls in the second category. Again, the deputy knows backup's arriving. He's the only one there. He's got to make sure that no one gets that gun. He made a decision to use the force he used. It caused de minimis injuries in terms of what he complained of at the scene. I can understand it if we had a record that allowed an inference, if we read it in the light most favorable to the plaintiff, that after subduing him, he actively resisted. Sure. Then maybe you have to do a little more. We don't have that. And I did look up post the case that you were citing, which I know in your brief, you cite the case, but you don't say anything about it. And I wonder if that's because in post the chokehold was first rather than second after the person was already subdued. Do you see that as a key difference? I don't in this case, because you have in that case, you have an even lesser level of danger. The post case is, again, a building code violation. There's no presence of a weapon or . . . Yeah, but the . . . . . . risk of immediate harm . . . The weapon's in the car, though. He wasn't subdued. The chokehold was used when that individual was not yet subdued, right? In post. Right, right. Whereas this individual, there's already been a grab and twist and subdued, and then there's the chokehold. That's why this case to me is different from post. And ultimately, my time is expiring, but ultimately, we have to look at these cases in the light of the reasonable officer at the scene, a tense situation. This is a moment-to-moment thing. Literally life and death possibilities are at play. Sure, right. Do we know if the door was shut to the car or not? Do we know if the door to the car was shut? I don't know, but we know indisputably that the deputy saw the weapon in the car and then took the actions that he took. Okay. I think we have your case, Mr. Bostrom. Ms. Humphreys has saved three minutes for rebuttal. Thank you, Your Honor. Just a few points in rebuttal. I think if you take the facts in the light most favorable, it is disputed if the gun was visible. But regardless, I think taking a reasonable juror could find- Because if we understand your client's testimony, it's that, and take that as true, the gun is under the seat. Correct. Which would allow an inference that it was not visible. I thought about that. It seemed to me that actually cuts against you because if the officer has been told of the firearm but doesn't actually see where it is, that might make it an even more dangerous situation in his eyes. I think what it suggests is that the gun wasn't easily accessible. If it's away, then it means that it would be more difficult for the passenger or someone else to easily grab it. Of course, the passenger may know exactly where it is when the officer doesn't get to see it. Perhaps that's true. But I think the most relevant point is that it was readily disposed. If you accept for a moment that the grab and twist, if it's just that, that this is not an excessive force case, your argument would be that the choke hold though and the strike make it different. The choke hold and the strike are absolutely excessive force and that is our argument. I think there is still a closer question about the amount of force used in the grab and twist because of the risk of injury and tachycardia. I mean, Rodriguez case is really bad for you in that context, isn't it? I mean, they've got a grab and twist on someone who has recently been operated on who has 25 surgeries and ends up with their arm amputated and we said qualified immunity, right? I mean, that's not good. This is distinguishable because of the choke hold and strike, absolutely push this into. It should have been clear to the officer that this was clearly an excessive use of force and a reasonable juror could find that this was an excessive use of force. Even if some force, as you said, like the grab and twist was allowed, the choking to the point that he was gasping for air and could not breathe makes a successive and then on top of that to strike him on his head. As you all noted, there are ways that this is distinguishable from post. There, the choke hold was used to subdue. It was also for a limited five seconds and there is evidence he was perhaps resisting as well. So all of those facts make it distinguishable. And I think to the point about the second passenger, even if that created a risk, that doesn't mean that punching the compliance suspect in the head after he's already been subdued somehow becomes reasonable. Opposing counsel said that the passenger was also at the car at one point in your client's allegations. At what point did the passenger leave the car? Was it before or after the choke hold and the punch? It was after the choking had started. OK, and does the record reflect whether the door to the car was open or closed, the driver's side door? I think that's unclear, but it's likely that the car door was open at the time. Yeah, thank you. And for all these reasons, we respectfully ask this court to reverse and remand. OK, thank you, Ms. Humphreys.